IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONNA F., § | | |
|     PLAINTIFF, § | | |
| § | | |
| V. § | CIVIL CASE NO. 3:22-CV-690-S-BK | |
| § | | |
| COMMISSIONER OF SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
|     DEFENDANT. § | | |

**FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, before the Court are Plaintiff's motion for summary judgment and Defendant's responsive brief, Doc. 10; Doc. 11. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings and conclusions herein.

**I.     BACKGROUND**

    *A.  Procedural and Factual Background*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed her application in January 2020, alleging disability beginning in December 2015 due to fibromyalgia,[1] arthritis, chronic migraines, lazy eye, and vision impairment. Doc. 7-1 at

---

[1] "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues." FIBROMYALGIA, Mayo Clinic, http://www.mayoclinic.org/diseases–conditions/fibromyalgia/basics/definition/con–20019243 (last visited Aug. 1, 2023). Social Security Ruling 12-2p provides that the "somatic symptoms" of

81, 231, 265. The Commissioner denied Plaintiff's application at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 7-1 at 5-10; Doc. 7-1 at 27; Doc. 7-1 at 89; Doc. 7-1 at 105.

Plaintiff was born in January 1961 and was 54 years old at the time of her alleged disability onset date. Doc. 7-1 at 81, 90. Plaintiff has a high school education with vocational training and past relevant work experience as a mortgage clerk and checker II. Doc. 7-1 at 236; Doc. 7-1 at 27, 76-77.

### B. Medical History

Plaintiff's medical records include a history of fibromyalgia, widespread body pain, headaches, fatigue, osteoarthritis, gastroesophageal reflux disease (GERD), kidney stones, Hashimoto's thyroiditis, rhinitis, eye problems, depression, and anxiety. Doc. 7-1 at 360, 389-392, 401-407, 443-445, 465, 470-472, 586-580, 602-603, 613, 724, 730-731.

After receiving a positive antinuclear antibody (ANA) test result, Plaintiff established care with Robert M. Miller, M.D., in December 2016. Doc. 7-1 at 456-457, 639. In January 2017, Dr. Miller referred Plaintiff to a rheumatologist, Rosy Rajbhandary, M.D., at Texas Health Huguley (Huguley) for evaluation of musculoskeletal pain. Doc. 7-1 at 470. Dr. Rajbhandary noted that Plaintiff had a tail bone fracture, whiplash injury resulting from three automobile wrecks, and reported constant fatigue, headaches, back pain, dry itchy eyes, dry mouth, Raynaud's, diffuse whole body pain measuring a level 9 on a scale of 10, fibromyalgia fog, and

---

fibromyalgia include, among other things, "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, [and] constipation." Titles II and XVI: Evaluation of Fibromyalgia, SSR 12-2p, 2012 WL 3104869, at *3 n.9 (July 25, 2012).

constipation. Doc. 7-1 at 471. Dr. Rajbhandary noted that on examination, Plaintiff had 14 of 18 fibromyalgia tender points using 4 kg force and assessed multiple joint pain and primary fibromyalgia syndrome. Doc. 7-1 at 471-472.

In April 2018, Plaintiff returned to Dr. Miller and reported fatigue, diminished activity, facial swelling, mouth lesions, abdominal pain, joint stiffness and swelling, and myalgia. Doc. 7-1 at 453. In May 2018, she revisited Dr. Rajbhandary, who noted she had 12 of 18 fibromyalgia tender points and tenderness of all extremities. Doc. 7-1 at 465. Dr. Rajbhandary prescribed Cyclobenzaprine and Methocarbamol for fibromyalgia, as well as Protonix for GERD. Doc. 7-1 at 465.

On follow-up with Dr. Miller in December 2018, Plaintiff reported migraine headaches with nausea, speech difficulty, decreased concentration, muscle weakness, vomiting, diarrhea, and blurry vision that worsened with noise and light. Doc. 7-1 at 443, 445. Dr. Miller assessed headache, ordered a head magnetic resonance imaging (MRI) scan, provided a neurology referral, and prescribed Ketorolac and Propranolol. Doc. 7-1 at 446. In late December 2018, when Plaintiff visited an emergency room related for kidney stones, she reported no headaches and no back or neck pain. Doc. 7-1 at 570.

In February 2020, Plaintiff saw Michelle Nash, NP, at Huguley, for follow-up care related to her fibromyalgia and reported muscle aches and arthralgias/joint pain. Doc. 7-1 at 389-390. On examination, Plaintiff had tenderness of her extremities, 12 of 18 fibromyalgia tender points, and Bouchard's and Heberden's nodes on both hands. Doc. 7-1 at 391-392. NP Nash prescribed Gabapentin and continued Plaintiff on Cyclobenzaprine and Methocarbamol. Doc. 7-1 at 391-392.

In June 2020, when Plaintiff reported worsening pain in her right shoulder, right elbow, and left hip that had lasted for three weeks, NP Nash increased Plaintiff's dose of Gabapentin and prescribed Celebrex and Cymbalta. Doc. 7-1 at 730. Also in June 2020, on a follow-up visit with her internist, Stella T. Hecker, M.D., Plaintiff reported muscle aches, muscle weakness, arthralgias/joint pain, back pain, swelling of her joints, morning stiffness, right arm and left hip pain, and migraine headaches. Doc. 7-1 at 586. Dr. Hecter noted that Plaintiff again had 12 of 18 fibromyalgia tender points, extremities tenderness, and Bouchard's and Heberden's nodes on both hands. Doc. 7-1 at 587-588.

At her next visit to Dr. Hecker in October 2020, Plaintiff reported feeling tired for the past four months, but denied any back pain, muscle pain, myalgias, or headaches. Doc. 7-1 at 602, 604. In November 2020, at Plaintiff's annual examination, Dr. Hecker noted the diagnoses of generalized anxiety disorder, Hashimoto's thyroiditis, depressive disorder, fibromyalgia, headache, and rhinitis. Doc. 7-1 at 613.

In connection with her disability insurance benefits application, Plaintiff obtained an October 2020 medical source statement from Dr. Rajbhandary. Doc. 7-1 at 593-596. She reported that, in addition to normal breaks, Plaintiff would require an additional two hours of rest breaks during an 8-hour workday. Doc. 7-1 at 595.

 C. *Administrative Hearing*

Plaintiff testified at her administrative hearing in January 2021 that she had "pretty bad" migraine headaches, during which, she had to go to bed, turn off all lights, and block all noise. Doc. 7-1 at 54. She testified it could take up to two to four hours for her headaches to subside and that she had these headaches at least two to three times per month and believed they were triggered by her fibromyalgia and Hashimoto's disease. Doc. 7-1 at 54-55.

4

Plaintiff further testified that her Hashimoto's disease affected her estrogen and testosterone levels and that she had to have treatments every four months. Doc. 7-1 at 57. She asserted that when her hormone levels got depleted, she felt tired, lacked energy, could have migraines, and had itchy and dry skin. Doc. 7-1 at 58. She averred that she had good days and bad days as to her energy levels but on bad days, sometimes had to go to bed. Doc. 7-1 at 58.

Plaintiff claimed she could not walk very well since her fibromyalgia affected her hips, and that she began seeing Dr. Miller after she woke up one morning and could not walk or get out of bed. Doc. 7-1 at 58. She stated that eight to ten days per month she had trouble walking and had to lie in bed, sometimes all day, and that she had a tingling feeling all over her body when she lay down to sleep at night and could have trouble sleeping. Doc. 7-1 at 59. She testified that, in addition to her hip pain, she also had fibromyalgia pain in her feet, hands, neck, and shoulder, she could not stand too long or her feet hurt "really bad," and she had trouble with her grip. Doc. 7-1 at 60. She also averred that if she tried to type on a computer keyboard, her fingers would start cramping and hurting, that she had trouble gripping a hairbrush while trying to brush her hair, and if she extended her arms for more than five to ten minutes, her shoulders started hurting and her arms felt heavy. Doc. 7-1 at 61.

Plaintiff testified that about eight times a month, she experienced fibromyalgia fog that affected her ability to concentrate, and also trouble comprehending things she read, requiring her to re-read things. Doc. 7-1 at 62. According to Plaintiff, on days she had fibromyalgia fog, she scrambled her words, her vision got blurrier, and she had trouble reading her mail or the newspaper. Doc. 7-1 at 63, 65-66. Plaintiff testified that on a good day, she could walk about a block, stand 30 minutes before having to sit in her recliner and rest, sit upright for an hour, and carry five pounds on an occasional basis. Doc. 7-1 at 62.

5

### D. The ALJ's Findings

In August 2021, the ALJ issued an unfavorable decision, applying the customary five-step sequential analysis. Doc. 7-1 at 16-28. The ALJ found that, from Plaintiff's alleged onset date of December 31, 2015 through December 31, 2020 (her date last insured), Plaintiff had the severe impairments of "fibromyalgia, migraine headaches, osteoarthritis of hands, Hashimoto's thyroiditis, [and] right eye amblyopia," but did not have an impairment or combination of impairments that met or medically equaled a listing for presumptive disability under the Code of Federal Regulations. Doc. 7-1 at 19, 21.

The ALJ further found that, through her date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform a modified range of sedentary work, with the additional limitation that she "can be off task up to, but not greater than, 10% of time during the workday." Doc. 7-1 at 23. With the help of a vocational expert ("VE"), the ALJ found that Plaintiff was able to return to her past work as a mortgage clerk and checker II. Doc. 7-1 at 27, 76-77. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Act, from her alleged onset date through her date last insured. Doc. 7-1 at 28.

## II.   APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

6

regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56(C)(1)(A) (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III.  ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ erred "failing to address whether [Plaintiff] could maintain, as well as obtain, competitive employment despite the waxing and waning nature of her fibromyalgia symptoms."[2] Doc. 10 at 32. The Commissioner responds that the ALJ found that Plaintiff could sustain work on a continuous basis when she determined Plaintiff's RFC, which necessarily incorporates that finding. Doc. 11 at 19. Further, the Commissioner argues that Plaintiff did not demonstrate that her fibromyalgia waxes and wanes such that the ALJ was required to address her ability to sustain continual employment. Doc. 11 at 20. Upon review, the Court disagrees with the Commissioner's position.

An ALJ need not make a "finding regarding [a] claimant's ability to maintain employment in every case." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam). Inherent in the definition of RFC is the understanding that the claimant has an ability to work on

---

[2] Because the Court concludes that remand is required on this issue alone, Plaintiffs other arguments are not reached here.

8

a sustained basis. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Thus, "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank*, 326 F.3d at 619. The ALJ only needs to make a specific finding regarding a claimant's ability to maintain work where, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Further, "to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Id.* at 620.

      The *Frank* court provided illustration of the circumstances under which a separate finding of whether a claimant was able to maintain employment could be required: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.* at 619. On the other hand, a claimant's testimony that his back pain caused him to have both good and bad days "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (citation omitted). Specifically, in *Perez*, (1) the plaintiff claimed that his pain waxed and waned between epidural injections, which were given over time; (2) he had "good days and bad days"; and (3) his expert witness testified that he did not believe the plaintiff could reliably work a 30-hour week. *Id.* at 465-66. The appellate court found that this was not sufficient to bring the claimant's case within the scope of *Frank* because "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.* at 465; *cf. Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (finding that while a claimant may be capable of finding a job and working for short periods of time, it may be that

9

"[t]he nature of the mental impairment is such . . . that the claimant is unable to remain employed for any significant period of time.").

"Fibromyalgia is a form of nonarticular rheumatism characterized by musculoskeletal pain, spasm and stiffness, fatigue, and severe sleep disturbance." *Pennington v. Astrue*, No. H-08-3616, 2010 WL 648413, at *1 n.2 (S.D. Tex. Feb. 23, 2010) (Rosenthal, J.) (citation and punctuation omitted); *see also* Titles II and XVI: Evaluation of Fibromyalgia, SSR 12-2p, 2012 WL 3104869, at *5-6 (July 25, 2012) ("[T]he symptoms and signs of FM may vary in severity over time and may even be absent on some days," and "symptoms of FM can wax and wane so that a person may have 'bad days and good days.'").

In *Pennington*, the plaintiff sought judicial review of an ALJ's final decision that she was not disabled under the Act, and therefore not entitled to disability insurance benefits, because, notwithstanding her "severe" impairment of fibromyalgia, she had the RFC to perform a variety of sedentary work, and that such jobs existed in significant number in the national economy. 2010 WL 648413, at *1, 19-20.  On appeal, the plaintiff argued that, given the nature of her fibromyalgia and evidence involving her symptoms, the ALJ had a responsibility to consider whether she would be able to maintain employment.  *Id.* at *23.  As a threshold matter, the district court recognized that the "Fifth Circuit has made clear that an ALJ is not required in every case to make a separate finding that a social security claimant who is capable of performing a job, will also be able to maintain that job." *Id.* at 23 (citations omitted).  The district court, however, considered the evidence that the plaintiff's fibromyalgia "waxe[d] and wane[d]" in its manifestations of disabling symptoms, and that she could not get out of bed on bad days but had the ability to complete routine tasks on good days.  *Id.* at *23-24.  Given the "nature of fibromyalgia" and the evidence of the plaintiff's waxing and waning symptoms, the

10

court concluded that the ALJ's failure to explicitly address the plaintiff's ability to sustain work on a continuing basis was reversible error. *Id.* at *24.

Here, as in *Pennington*, Plaintiff's diagnosis of fibromyalgia is similarly characterized by episodic features and "waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619. Further, unlike in *Perez*, the evidence shows that Plaintiff's symptoms went well beyond pain that lessened and returned in cycle with the efficacy of her treatment. *See Perez*, 415 F.3d at 465-66 (plaintiff testified that his pain waxed and waned between his intermittent epidural injections). There is substantial evidence to support these features of Plaintiff's fibromyalgia, including her medical records (previously summarized by the Court) that document periods of increased symptoms and lessened symptoms over time[3]; Dr. Rajbhandary's opinion (Doc. 7-1 at 595); and Plaintiff's testimony, including her testimony that because of her fibromyalgia, she would have eight to ten days per month where she had trouble walking and had to lay in bed, sometimes all day. *See* Doc. 7-1 at 59; *see also* Doc. 1 at 50-51, 62-63.

Under these circumstances, the ALJ was required to make a specific determination as to whether Plaintiff could maintain employment on a regular, continuing basis. *See Frank*, 326 F.3d at 619-29; *Singletary*, 798 F.2d at 828. By failing to make that determination, the ALJ committed legal error. *See Drake v. Colvin*, No. 3:15-CV-2597-G-BK, 2016 WL 5793208, at *6 (N.D. Tex. Sept. 6, 2016) (Toliver, J.), *adopted by* No. 3:15-CV-2597-G (BK), 2016 WL 5661665 (N.D. Tex. Sept. 28, 2016) (Fish, J.) (reversing and remanding after finding that the

---

[3] The Court notes that the Commissioner, in her response brief, appears to recognize that Plaintiff's fibromyalgia waxed and waned. *See* Doc. 11 at 6 ("Plaintiff reported experiencing pain coming from several [s]ites," but "[t]here were also times when she denied having any pain or headaches.").

ALJ erred in failing to determine whether the "[p]laintiff could maintain employment on a regular, continuing basis[,]" where the evidence established that the plaintiff's rheumatoid arthritis was episodic and waxed and waned over time in its manifestations of disability); *Natalie O. v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-608-K-BK, 2020 WL 1015827, at *4 (N.D. Tex. Feb. 14, 2020) (Toliver, J.), *adopted by* No. 3:19-CV-608-K, 2020 WL 999828 (N.D. Tex. Mar. 2, 2020) (Kinkeade, J.) (reversing and remanding after finding that the ALJ erred in failing to determine whether the "[p]laintiff could maintain employment on a regular, continuing basis[,]" where the evidence established that the plaintiff's immunoglobin A deficiency "was characterized by episodic features that waxed and waned over time" in their manifestations of disability).

   Generally, an administrative appeal of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citation omitted). Here, the ALJ's failure to specifically determine whether plaintiff could hold whatever job she found for a significant period of time is legal error that affects Plaintiff's substantial rights. *See Drake*, 2016 WL 5793208, at *6; *Natalie O.*, 2020 WL 1015827, at *4. When the Commissioner "has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990) (citation omitted). Accordingly, reversal and remand is warranted. While based on this conclusion, the remaining issues Plaintiff raises need not be addressed in this Court, they may be raised on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings and conclusions herein.

**SO RECOMMENDED** on September 7, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).